We'll hear the first case on calendar, Shepard v. Attea. Good morning. Good morning, Your Honors. May it please the Court, Luke Flynn Fitzsimmons on behalf of Appell and Christopher Shepard. My associate, Cameron Freedman, is joining me at Council's table. We deserve two minutes for rebuttal. Mr. Freedman will be arguing rebuttal. Yes, got it. Your Honors, we respectfully request this Court reverse the District Court for three reasons. First, Your Honor, the Supreme Court's decision in Heck v. Humphreys does not bar Appellant Shepard from bringing an excessive force claim against the first appellee, Appellee Attea, even though he pleaded guilty to assaulting Appellee Attea, because that claim does not necessarily conflict with his guilty plea in that case. Well, what if his claim is that the amount of force was excessive relative to a person who is not attacking Attea, but that it might not be excessive if he was attacking Attea, and they had to pull him off, peel him off, manhandle him to get control of him? Your Honor, even in that scenario, it wouldn't necessarily conflict. As courts have looked at whether Heck bars an excessive force claim based on whether there's a necessary conflict. And the best way to look at that is whether the elements of the claim actually are in conflict. And here they're not. There's no necessary conflict between an excessive force claim that has to prove malicious and sadistic use of force and a guilty plea in this case, which simply requires proving that Mr. Shepard was in an institution. At the same time, he inflicted an injury on another person. Did the complaint allege that he did not attack Officer Attea? No, Your Honor, it did not. But one thing that's worth keeping in mind here is when he filed that complaint, he was pro se. He was pro se through the first six years of this litigation. And courts have recognized that Heck is a particularly complex area of case law, and the general presumption that we should construe pro se complaints liberally would apply doubly here. In fact, this court has explained the rationale behind this liberal construction of pro se complaints, stating that this is necessary to protect pro se litigants from inadvertent forfeiture of important rights because of their lack of legal training. And that's exactly what we think appellees are doing here. Shepard was unrepresented when he filed this complaint. He has no legal training. What's the remedy that you're asking us to give you? Your Honor, there's several remedies. We think that what we would prefer would be simply reverse the district court order and allow us to go to trial. We think an appropriate limiting instruction, saying that Mr. Shepard cannot at trial in any way challenge his guilty plea, challenge the facts undermining his guilty plea, would be entirely appropriate in this case. And we would ask for that relief. And the alternative, as I mentioned in our briefing, allowing Mr. Shepard to file an amended complaint that makes crystal clear there's no challenge whatsoever to his conviction. What changes would be required in order to make that clear? Your Honor, this time being represented by counsel, he would acknowledge the conviction for assault. He would not challenge how the incident began. And I think those would be the only real changes required. We attached a proposed amended complaint to our motion for reconsideration below, so we would be ready to file that immediately upon remand. Judge Serguson, in March of 2014, didn't you, in which you laid out your disposition? Yes, Your Honor, that's correct. So you knew several years because the motion was decided in 2016, wasn't it? The motion, you're right. Judge Serguson made his suit spontaneously. What happened was that the local assistant attorney general had an epiphany and suddenly realized that heck might be in play here and made a motion outside the period of time when the motion, the time for filing a motion had long since passed. The AG, the deputy AG or assistant AG suddenly realizes heck V. Humphrey might be in play, makes a motion to file a motion to dismiss. That's denied, then moves to reconsider, as I recall. Maybe I'm wrong. And you cross move, or you oppose that, but don't cross move to amend, right? That's correct, Your Honor. The judge denies the AG's motion, but then on his own then adopts the theory of the AG and dismisses the complaint on heck grounds, right? That's correct, Your Honor. He, in his opinion, Judge Serguson, makes clear that your theory could work, but says the theory of the complaint is inconsistent with his plea to assault in the second degree, correct? Yes, Your Honor, that's correct. So the problem really boils down to whether he abused his discretion in refusing to ultimately allow you to amend, which you moved on reconsideration, not cross moved when first confronted with the fact that this was going to happen. And look, you're doing God's work because you're doing this pro bono, but the question for me is ultimately what do we look at to decide this? Your theory makes sense to me in the sense that you could be convicted of assaulting a correctional officer and then still have an Eighth Amendment claim for what happened to you after you were subdued. The problem is his theory and his complaint is inconsistent with his conviction. And the court simply exercised its discretion and didn't allow you to amend. And you knew about this way back in 2014 and didn't move to amend the complaint way back then. Why didn't you do it then? Your Honor, we didn't think there was good cause to amend the complaint at that point. Four years had passed since the deadline. He had a pro se. He had a pro se, and you took up this pro se's cause, and you knew that his complaint was deficient. He had a heck of a problem back then. The AG didn't get it, but you got it. And the problem I have is that I have to then say that Judge Sirigusa abused his discretion, not allowing you to amend, when it was clear that you knew two years earlier. Your Honor, our view is we didn't think there was good cause to amend at that point. In terms of the delay, at some point, I mean, we moved the moment we lost the motion. We immediately moved for reconsideration. We moved promptly there. And the other point I would just like to make is I think that even if the complaint, and we don't acknowledge the complaint is necessarily inconsistent given he was pro se when he filed it, but if heck is fundamentally about making sure there aren't inconsistent adjudications and not unduly punishing a pro se claimant who moved and went to depositions and filed a complaint without the assistance of counsel, he's now made clear he's willing to proceed to trial in such a way that does not call that into question. He's still bound by res judicata. He's still bound by judicial estoppel, but he cannot challenge and will not challenge his conviction. Your Honors, I see that I'm almost out of time. I would like to make one point about Appellees Kyle and Mendez, the other two appellees in this case. There's absolutely no conviction on the record where Mr. Shepard was convicted of assaulting those two individuals. And as a logical matter, if this claim were to go forward against those two individuals, it could not necessarily, again, that's the key term as the Supreme Court has stressed, necessarily undermine that conviction, his conviction for assaulting Appellee. Why is that? Because the amount of force that is appropriate would depend upon whether your client attacked Officer Attia. And if he did, then it would certainly be justified for some level of force to be brought to bear by other officers in the prison. So I'm not sure. Go right ahead. I was going to say, I see I'm out of time. Ignore the red light. Why does it, what difference does it make? Well, because Heck is a very narrow doctrine. He's bound by other doctrines that prevent him from saying things that are inconsistent at trial with what he's said before. But Heck is really just about inconsistent adjudications from a single event. And there's been case law, not in this circuit, but case law in other circuits where a defendant has resisted arrest and assaulted one officer and then brought claim against multiple officers involved in the event. And courts, this is Adams v. Dreyer and Hill v. Moore from the Tenth and Ninth Circuit respectively. And the court there held, ultimately, that he could proceed against the individuals whom he did not plead guilty to assaulting. And we're asking for the same remedy here because, again, Heck is just a necessary conflict. And, in fact, this court has- Can you fill me in as a matter of curiosity? What was going on in this case for six years? So, Your Honor, we came in in 2014. Before that, not much had happened. There was, obviously, the claim was filed. Answers were filed. Some preliminary summary judgment motions were filed in which certain defendants were removed from the case. I think the hearing officer and the superintendent were named, and they were dismissed early on. There were some very, very limited disclosures. But before 2014- Is discovery complete? We had moved- Any deadline that could be conceived would surely have passed. When we came in, we moved to open discovery to allow some limited discovery, depositions of the correctional officers, that sort of thing. We also moved to- Was that granted? It was granted. We also moved to allow expert discovery. That was granted. If we were to go back to the district court, the only thing that's outstanding would be depositions of the experts, and then we'd be ready to go to trial. With the senator's permission, Judge Sergus' determination is a 12B6 determination, right? It's a dismissal on the complaints barred by Hecht v. Humphrey, right? I believe that's right, Your Honor. He didn't give you any advance notice that he was going to sua sponte determine the matter, did he? No, he did not, Your Honor. Of course, that's different. The case is . . . I'll be honest with this. It's the one thing that really troubles me about this case. If this had been summary judgment and he decided to determine a summary judgment matter, you would have had notice about that, and you would have had an opportunity to cross-move. If he decided himself to sua sponte grant summary judgment, he would have had to give you notice, right? If he decided to sua sponte? Your Honor, I'm actually not sure if he would have. The issue is . . . but what's curious about this is that it's a 12B, and 12B doesn't seem to require it. So you had . . . I mean, you went in to oppose a motion to file a late application to dismiss the complaint, which you won, and then got your complaint dismissed for the exact same reason, right? That's exactly right, Your Honor. Okay. Thank you. Thank you, Your Honors. Okay, Mr. Friedman, on rebuttal. Good morning. May it please the Court. Patrick Woods on behalf of the State Defendants. Plaintiff in this case put forward a very specific excessive force claim, one that does not permit the kind of bifurcation to . . . that plaintiffs have suggested at several points in their briefs. His claim, very clearly from his complaint, very clearly from the exhibits in his complaint, and very clearly from the deposition testimony in which he admits to perjury, is that no force was acceptable. This was a claim where three officers acting at the direction of a force . . . He is pro se, so he was arguing excessive force. It's really very difficult for people to say that a certain amount of violence should have been used on me. And, you would agree that it is perfectly possible in these circumstances for the force to be excessive. I mean, if they sawed off his hand, that would be excessive, even if he was attacking Officer Attia. That's certainly true, but the complaint didn't allege any course of events even remotely like that. Nor did its exhibits. And, on the issue of solicitude, because I think that that's an important concern here. While there's solicitude, this Court has held it repeatedly, even in Treatsmen and its numerous progeny, that the courts can't read in inconsistent facts. They can't read in claims that are not . . . claims or arguments that are not suggested by the submissions themselves. And, as this Court explained in Tracy v. . . I have to read in everything that is fairly suggested. Right. And, often, judges exercise a little bit of creative imagination. I think that's true. And, this Court sort of discussed the discretionary amount of solicitude in Tracy v. Freshwater. And, the very same language, although in Tracy instead of in the case that appellants were referring to, is important. It's that the point of solicitude is to prevent plaintiffs from inadvertently losing important rights because of their lack of legal training. Not to permit them to escape their facts. And, plaintiff here pled exactly the claim that he wanted to. There's no question, I think, on this record, on the face of the complaint itself, or on . . . from his later deposition testimony. Does the face of the complaint recite that he did not attack Officer Attia? It does not expressly deny that he attacked Officer Attia, but it . . . Why can't the claim that is being pled be pursued without violating Heck? Because Heck would only be violated if he said . . . if his not attacking Officer Attia was a necessary part of his claim. Because his description of the attack included the natural reading that he did not attack Officer Attia. And, his exhibits make very clear that he did not attack Officer Attia. And, the exhibits are incorporated into the complaint. To that point, if I could refer the Court to . . . this is JA-19. It's page 7 of the complaint. Specifically, he describes the incident as . . . . . . and for complaining of the cell extraction of inmate Figueroa on May 16th, 2005. Four pages later, he says again that Herzig orchestrated the assault on him. That's a . . . Why can't a district judge at trial, if there were a trial, control for these . . . for this condition? And, explain to the jury that this is a fact that the plaintiff has to live with. Well, I think that . . . A fact that is established in the disciplinary opinion. I think certainly if the case were to go to trial, that kind of instruction would be absolutely necessary. But, the question . . . Why would it be necessary? Because he's barred by collateral estoppel from his prior conviction. And, it would be necessary, but it would also be useful, wouldn't it? I'm not sure I follow, Judge. Well, it would be useful because it would foreclose the danger that the plaintiff would prevail in a way that would be inconsistent with Harris. It suddenly becomes, as opposed to an unprovoked attack, correctional officers trying to subdue a dangerous inmate. It's two different cases. That's correct. I think it's two different claims, Judge. That's the point Judge Jacobs, I think, was making. I don't feel like I'm reading his mind. Go right ahead. The reception is a little bad today. It's a different case where you're measuring the force that's employed against someone who has assaulted an officer in a correctional facility, where the officers themselves are not armed, and there are other inmates available to join in the assault. The officers have to do a certain amount, they have to do things to subdue that individual and remove him or her from the environment, so that they themselves are not subject to further injury at the hands of others or at the hands of the inmate. That's entirely different than just beating the hell out of someone because he's filed a complaint against you as he's walking to get his kosher meal. Wouldn't you agree? I agree completely. Indeed, some of the force that may have been visited upon him to subdue him while substantial may have been justified in restraining him. They weren't arresting him, they were restraining him after the assault. Wouldn't you agree? I would agree with that too, Judge. It's really two different cases in a way, and quite frankly to the state's benefit, to be charged with having assaulted someone who assaulted a correctional officer in upstate New York. I would agree that it's two different . . . The western district home to more than 50% of those people incarcerated in the state of New York as it is. Many people of whom are correctional officers are related to correctional officers. That's correct, Judge, and I would agree that it's two very distinctly different claims, and if plaintiff had pleaded this second alternative claim, then we wouldn't be here. It wouldn't be barred by HEC. I get that, but here's my problem. Judge Serguson, it wasn't you. It was Mr. Levine down there in the Rochester office that had this epiphany about HEC v. Humphrey. After five years, he suddenly figures out HEC v. Humphrey, and he makes this motion. He gets it denied, and then Judge Serguson turns around and dismisses it without ever saying anything to the plaintiff. Plaintiff's resisting an attempt to dismiss the complaint on the grounds of HEC and saying, oh, this is all late, this is years after the fact, and then suddenly loses anyhow because the judge really agrees with the theory but just denies your application. Does that really seem fair to you? Well, first, plaintiffs did put in an . . . They may be right on the complaint as alleged, but that's not . . . I mean, we're talking about an abuse of discretion here, right? Correct. Refusing to allow them to amend their complaint. Correct. In fact, his opinion says how they could have amended the complaint to have stated the claim, doesn't it? It does. So his opinion itself contains an acknowledgment that he could have a legitimate complaint even if he had pled guilty to the assault, doesn't it? Yes, that's correct, Judge. But he denies the application after dismissing their complaint. So he knows that the complaint can be amended to state a legitimate claim, but he denies the opportunity for a formerly pro se inmate who has now got pro bono counsel of a very distinguished firm in New York to amend the . . . wants to amend the complaint to state what would be a facially adequate complaint, doesn't he? Yes, on the lack of diligence on the part of that counsel. I mean, does that sound . . . you think that's fair? Plaintiffs opposed the heck issue on the merits in their response to the motion out of time. Okay. Then they did have a full . . . they did not at that point propose to amend the complaint to avoid it. They didn't propose any of their other alternative remedies. They wait seven months from that point for the decision to come out against them before any of that comes forward in their motion for reconsideration, where they now have a full and fair opportunity to present all of their arguments to the district court. Do you say that they at least knew that this was a problem, they'd known about it earlier, and they should have cross-moved at the time they were confronted with your predecessor's motion to file out of time? Correct. And at least some aspect of the problem was aware . . . they were aware of almost as soon as they came onto the case at that status conference. And if I could refer the Court to page 937 of the JA, which is the transcript there, this is what they said at the conference. So, although our client thinks that he did nothing wrong, and that is our contention, we could imagine a case in which the jury believes there was a mixture, perhaps, of right and wrong, and then there would be a question of whether the response was appropriate. There's an acknowledgment in there, one, that he's not, in fact, abandoning his assertion of innocence at that point, but also, two, that the alternative version, this alternative claim, isn't going to be consistent with what he's pleaded and maintained so far, because it requires the jury to disbelieve him. Despite that, no move is made to amend the complaint, and the basis for which the denial was lack of diligence. It does seem a bit unseemly that the plaintiff who drafted a complaint pro se is subject to having that closely parsed, and if necessary, and then have it thrown out on the ground, that it's inconsistent with HAC, when an experienced lawyer took years to realize the ground of objection based on HAC. I mean, as your emissary, Mrs. Fitzsimmons, said, this is a complex area of law. This court has made it more complex in poverty, but it started out complex as it was. I seem out of time. Can I? Go ahead. Sorry, so I think I may have lost the thread there for a second. No, I mean, the thing is, this complaint drafted by a pro se was dismissed on a basis that didn't even occur to an experienced lawyer for years into a litigation, during which time there was discovery. And your Honor is absolutely right that we should have realized the HAC problem earlier, and the district court was right in saying that we didn't have a particularly good experience. No, I'm not saying you should have realized it earlier, because I'm not sure there is a HAC problem. Well, your Honor, I would respectfully disagree with that, and I don't think that it's a close parsing of this complaint to read the case, to read in the claim that he made, which is an unprovoked assault, as a result of a conspiracy against him, that he then maintains for six years, including through a summary judgment motion related to other folks, through his own deposition where he admits to perjury. I mean, this court has held repeatedly that by summary judgment, plaintiffs are supposed to have made their claims clear. We're now six years into the case. By the time that the court is denying leave to amend, we're 12 years from the incident, 10 years from his conviction, 8 years into the case, 2 1⁄2 years since he obtained counsel. No, I agree with this is no way to run a railroad. We still have the same issue. Anyway, thank you. Thank you, Judge. All right. Thank you, Your Honor. There's been a lot of discussion here about whether the complaint adequately alleges excessive force, even assuming, as we must, that Shepard assaulted Officer Atiyah. However, whether the complaint adequately alleges excessive force, assuming, as we must, that he assaulted Officer Atiyah, is fundamentally not a Heck issue. Heck only bars claims if the successful prosecution of that claim would necessarily imply the invalidity of a prior conviction. The issue of whether he adequately pled excessive force is a question for a jury to determine or at summary judgment as this court determined in Griffin v. Criffin. And we respectfully submit that regardless of whether excessive force has been adequately pled, that is fundamentally not a Heck issue. We'd also like to point out that regardless of how this court decides this issue as to the conviction for assaulting Officer Atiyah, there simply is no outstanding conviction as to Officers Kyle and Mendez. Heck only bars claims, the successful prosecution of which would necessarily imply the invalidity of a prior conviction. There is no conviction as to Officers Mendez or Kyle. Officers Mendez and Kyle are not mentioned in the plea colloquy. Therefore, to hold that Shepard's claims against Officers Mendez and Kyle would be a substantial expansion of Heck jurisprudence and would effectively adopt a categorical rule that anyone who was present at the scene of the incident to which he pled guilty, he cannot plead a claim against them. That is not supported under Heck. Well, wouldn't you agree that the degree of force used by the other two defendants would be appropriate or not, in part dependent upon whether they were saving a colleague from being assaulted by your client? It would depend in part on that issue. But a successful claim on that ground would not necessarily imply the invalidity of the prior conviction. On this point, this Court's decision in McKithen v. Brown is instructive. The Court stated that Heck does not bar a Section 1983 action that at most increases the likelihood that a plaintiff will eventually be able to overturn a still outstanding conviction, but which does not go so far as to necessarily demonstrate the conviction's invalidity. Does the complaint allege that your client ended up in the hospital? It did. Okay. Thank you. Thank you all. We'll reserve decision.